Vincent AMATANGELO and Gina
Amatangelo, Appellants

v.

Mary K. SCHULTZ, Appellee.

No. 03–CV–288.

District of Columbia Court of Appeals.

Argued April 2, 2004.
Decided March 10, 2005.

André Forte, with whom Amy Leete
Leone, Rockville, MD, was on the brief, for
appellants.

certain language in Redbook Instruction 2.24,     known as the "Informer's Instruction."

Heidi L. Halleck, Washington, DC, for appellee. W. Charles Meltmar, also entered an appearance for appellee.

Before TERRY, REID, and WASHINGTON, Associate Judges.

TERRY, Associate Judge:

Following an automobile accident, appellee Mary Schultz filed a negligence action, seeking damages for her personal injuries, against appellants Gina Amatangelo (the driver of the other car) and Vincent Amatangelo (the owner of the other car).[1] Before trial, the parties entered into an agreement[2] which provided (1) that if the Amatangelos were found liable and the jury awarded less than $20,000, Ms. Schultz would still receive a minimum of $20,000; (2) that if the Amatangelos were found liable and the jury awarded more than $300,000, Ms. Schultz would receive only $300,000; and (3) that if the Amatangelos were found liable and the jury awarded damages in an amount between $20,000 and $300,000, the award would not be modified. The jury eventually found that the Amatangelos were not negligent and therefore not liable, and the court entered judgment in their favor. The judgment also provided "that the defendants recover of the plaintiff their costs of action."

The Amatangelos then filed a motion for costs, which the trial court granted (in part) because it found that the parties' pre-trial agreement "was contingent upon a finding of liability by the jury." Ms. Schultz responded by filing a "Motion to Enforce Settlement Agreement," arguing that the court's ruling on the motion for costs was in error because it was based on incomplete facts. After the Amatangelos filed an opposition, the trial court vacated its previous order on costs, concluding that it had erred in interpreting the agreement. The court then granted Ms. Schultz's motion to enforce the agreement and ordered the Amatangelos to pay appellee $20,000, minus $1,287.35 in court costs.

On appeal, the Amatangelos argue that the trial court did not have jurisdiction to rule on Ms. Schultz's post-trial motion because it was not timely filed under Civil Rule 59(e),[3] and that in any event the court should have denied the motion. We hold that the motion was timely because it was filed under Rule 60(b),[4] not Rule 59(e), but that the court erred in granting it. A contract was made between the parties before the pre-trial hearing, and any change to that contract required consideration. Because there was no consideration for the change that the court found had been made, the original agreement was not modified and must therefore be enforced according to its terms. This means that the court's original ruling that the agreement "was contingent upon a finding of liability by the jury" was correct and that the award of $20,000 to Ms. Schultz must be reversed.

I

A few months before the trial began, the parties discussed the possibility of settlement, as well as an agreement setting maximum and minimum damages that would apply if the case proceeded to trial.

1. Appellee also sued State Farm Mutual Insurance Company for breach of contract, but that claim is not before us in the present appeal.

2. In their briefs the parties frequently refer to this agreement as a "high-low agreement."

3. Super. Ct. Civ. R. 59(e).

4. Super. Ct. Civ. R. 60(b).

The parties did not settle prior to trial, but they did make an agreement on damages, which was later reduced to writing and filed with the court. At a hearing shortly before trial, both counsel orally placed on the record the agreement's terms. However, their explanation of those terms was different from the terms set forth in the written document filed with the court. This discrepancy was not noted at that time and did not come to light until after the trial had ended.

## A. *Pre–Trial Negotiations*

On March 18, 2002, appellants' (defendants') counsel wrote a letter to appellee's (plaintiff's) counsel which stated in its opening paragraph:

> I am writing this letter to confirm that we have agreed upon a guaranteed minimum and maximum verdict for the trial .... Your client will be guaranteed a minimum amount of $20,000 *if she prevails on liability.* In return, your client will cap her damages at $300,000. As a result, if the jury enters a verdict less than $20,000, your client will receive $20,000. If the jury enters a verdict in excess of $300,000, the judgment will be limited to $300,000.... It is also my understanding that as a result of the hi/low agreement, you are dismissing your case against Mr. Vincent Amatangelo. [Emphasis added.]

Plaintiff's counsel responded as follows on March 20:

> First, I agree to the high/low figure discussed in your letter ($300,000/$20,000). However, I cannot dismiss Mr. Vincent Amatangelo as a defendant unless that high/low figure is guaranteed for any trials that may result from an appeal of our upcoming trial. If you are willing to guarantee the high/low amount for any and all trials, I will dismiss Mr.

Amatangelo from the above-captioned lawsuit.

Defendants' counsel replied on April 22, stating, "The high/low figure is guaranteed only for the upcoming trial. As a result, it is my understanding that you will not voluntarily dismiss Mr. Vincent Amatangelo as a defendant in this case." Plaintiff's counsel wrote back on May 9: "I am writing this letter to accept your latest hi-lo offer of $20,000/$300,000 under the condition that you will stipulate to the authenticity and accuracy of [Ms. Schultz's] time records that I mailed to you on March 27, 2002."

In a letter dated May 28, 2002, defendants' counsel wrote to plaintiff's counsel:

> I am in receipt of your May 9, 2002, correspondence regarding [this case] and once again am perplexed. Your May 9th letter indicates that you have accepted our latest high/low offer of $20,000/$300,000 "under the condition that" the defendants will stipulate to the authenticity and accuracy of [Ms. Schultz's] time records that were mailed on March 27, 2002. Your letter also requests that I let you know if I object to those conditions.
>
> I do object to those conditions for the following reasons. On March 18, 2002, I wrote a letter to you confirming that we agreed to a guaranteed minimum verdict of $20,000 with a guaranteed cap of your client's damages at $300,000, if she prevailed on liability.
>
> In your March 20, 2002, letter, you indicated that you agreed to the high/low figure discussed. *As a result, it is my understanding that we had an agreement that the damages for the upcoming trial would be capped at $300,000 with a minimum of $20,000.* Although your client requested that the high/low agreement exist for any trials that may result from any appeal of this

trial in exchange for dismissing my client, Vincent Amatangelo, from this lawsuit, we were unable to agree to those terms. As a result, as of March 20, 2002, there was a high/low agreement for those figures as summarized in my March 18, 2002, letter, which you agreed to in your March 20, 2002, letter.

The March 27, 2002, letter to which you referred in your May 9, 2002, letter mentioned nothing whatsoever about being related to the high/low agreement that was already reached. As a result, it is my clients' position that the high/low agreement is already in existence and that there is no condition that the plaintiff's time records which were sent on March 27, 2002 be stipulated to as being authentic and accurate.

Unless I hear from you to the contrary, in writing, within seven days of the date of this letter, I will assume that you agree that, for the upcoming ... trial, your client is guaranteed a minimum verdict of $20,000, if she prevails on liability, and she will cap her damages at $300,000. Please contact me immediately if you disagree with any of the terms of the agreement as outlined. [Emphasis in original.]

Defendants' counsel followed this May 28 letter with another letter on June 14:

As you may recall, I wrote to you on May 28, 2002, asking that you contact me immediately if you disagreed that we have reached a high/low agreement in the above-referenced matter. Since you have not responded in writing, by telephone, or by e-mail, I will assume that you agree with my May 28th letter regarding that issue and that we do indeed have an agreement as outlined in our previous letters.

On August 8, 2002, defendants' counsel sent yet another letter to plaintiff's counsel:

As outlined in our previous correspondence, we have agreed to enter into a high/low agreement in [this case]. Enclosed please find a Stipulation which outlines the agreement. Unless I hear from you to the contrary within twenty-four (24) hours of this letter, I will assume I have your authority to sign your name to this Stipulation and file it with the Court.

Of course, I will provide you with a courtesy court-stamped copy. Thank you for your time and attention to this matter.

A few days later, defendants' counsel filed with the court a document entitled "Confidential Stipulation."[5] The date of filing is not clear from the record, but the copy of the stipulation that we have in the record on appeal bears a handwritten date of August 14, 2002, at the bottom of the page. The stipulation says:

The parties agree that if the Plaintiff prevails on liability, she will be guaranteed a minimum verdict of $20,000 and a maximum verdict of $300,000. As a result, if the jury enters a judgment in favor of the Plaintiff which is less than $20,000, the Plaintiff will be provided $20,000 by the Defendants. If the jury's verdict exceeds $300,000, the maximum amount the Plaintiff will receive to satisfy the judgment will be $300,000. Should the verdict be between $20,000 and $300,000, the verdict will be as returned by the jury.

B. *The Trial and Subsequent Events*

On August 16, 2002, the case was called for trial. Before the trial began, defen-

---

5. "Confidential," in this context, apparently means only that the contents of the stipulation should not be disclosed to the jury.

dants' counsel brought up the matter of the agreement:

MR. FORTE [defendants' counsel]: ... The second issue dealt with a high low stipulation. I have filed a confidential stipulation in the jacket, and I don't know if it got to the jacket yet, Your Honor, but just so that the court is aware, there is a high low agreement in this case.

THE COURT: Well, I'm sorry, but you are going to have to explain to me what you are talking about.

MR. FORTE: Sure. I mean, it's nothing that is going to be said to the jury. But plaintiff and the defendants have agreed that *if the jury verdict comes in, in excess of my client's policy, that the maximum they would get would be my client's policy limits. If the verdicts came back in favor of the plaintiff on liability and it was under $20,000, that she would get a minimum of $20,000.*

MR. MELTMAR [plaintiff's counsel]: Or if it was a defense verdict, she would get $20,000.

THE COURT: All right.

MR. MELTMAR: So there's a floor of 20.

THE COURT: ... [W]hat's the policy limit?

MR. MELTMAR: Three hundred thousand dollars.

THE COURT: So it's a big—it's still a range.

MR. FORTE: Yeah, it's still a gap, so if you were looking at settlement, it's still a large gap there....

THE COURT: There's nothing that I need to do with respect to that, right?

MR. FORTE: No, no, I just wanted to alert you of that because it was a potential issue that might come up.

Defendants' counsel did not challenge the statement by plaintiff's counsel that plaintiff would receive $20,000 even if the jury found that the defendants were not liable. But plaintiff's counsel did not dispute that the parties had formed a contract on this issue, or that the text of the written stipulation filed with the court reflected the final agreement.

The trial began on August 19, and at its conclusion the jury found that the Amatangelos were not liable. The court accordingly entered judgment in their favor. When plaintiff's counsel was informed shortly after trial that the Amatangelos would not be paying the supposedly agreed-upon $20,000 because they believed that the agreement was contingent on a finding of liability, counsel ordered a transcript of the August 16 hearing to resolve the matter.

On September 6, 2002, a little more than two weeks after trial, the defendants filed a motion for costs, which the plaintiff opposed. Plaintiff argued that the costs requested were unreasonable and that, in any event, the motion should be denied because the plaintiff was the prevailing party under the agreement. On October 16 the court granted appellants' motion for costs in the amount of $1,287.35, stating in its order:

Nothing in the record indicates that the offer of judgment extended in this case was rendered void by the subsequent entry of the high/low agreement of the parties. Further, the correspondence between counsel, copies of which are attached to Defendants' reply, convinces the Court that the high/low agreement was contingent upon a finding of liability by the jury. Accordingly, Defendants may recover costs....

The court entered this order before it saw the transcript of the hearing on August 16, 2002, the day on which both counsel had explained the high-low agreement to the court. After plaintiff's counsel final-

ly received a copy of that transcript on December 10, he filed on December 20 a "Motion to Enforce Settlement Agreement," [6] to which he attached a copy of the August 16 transcript. Defendants' counsel filed an opposition, both on jurisdictional grounds (see part II of this opinion) and on the merits.

After reviewing the transcript, the trial court reversed its earlier ruling that the agreement was contingent on a finding of liability, concluding instead that the agreement applied notwithstanding the jury's finding on liability. The court said in its order that, regardless of whether the stipulation filed with the court was valid, an agreement had been reached and that "it was later modified and the parties recognized the modification before the court." The court relied on *Clark v. Clark*, 535 A.2d 872, 877 (D.C.1987), and the RESTATEMENT (SECOND) OF CONTRACTS § 4 (1981) to support the new finding. It ordered the defendants to pay the plaintiff $20,000, minus $1,287.35 in court costs. From that order the defendants noted this appeal.

## II

■ Appellants argue that appellee's Rule 60(b) Motion to Enforce Settlement Agreement was actually a Rule 59(e) motion, and that the trial court did not have jurisdiction to grant that motion because it was not timely filed under Rule 59(e). Whether a motion is properly classified as a Rule 59(e) motion or a Rule 60(b) motion "is determined by the relief sought, not by its label or caption." *Wallace v. Warehouse Employees Union*, 482 A.2d 801, 804 (D.C.1984) (citations omitted). Generally speaking, if the motion seeks reconsideration of an order because of a mistake of fact or a change in circumstances, it is properly considered under Rule 60(b), "but if the movant is seeking relief from the adverse consequences of the original order on the basis of error of law, the motion is properly considered under Rule 59(e)." *Id.* (citations omitted). A Rule 59(e) motion must be filed within ten days from the entry of the judgment or order,[7] whereas a Rule 60(b) motion need only be filed "within a reasonable time" or, in some instances, within one year after entry of the judgment or order.[8]

■ We hold that appellee's motion was a Rule 60(b) motion because it sought reconsideration of an order based on a mistake of fact. The trial court's original order of October 16, quoted at page 552, *supra*, did not take into account the discussion at the August 16 hearing because a transcript of that hearing had not yet been prepared.[9] However, as soon as appellee

---

**6.** This of course was a misnomer, since there never was a settlement.

**7.** Rule 59(e) states in part: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

**8.** Rule 60(b) states in part:
   On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

**9.** In her opposition to appellants' motion for costs, appellee had informed the court of the missing transcript:

   Counsel for the Plaintiff has requested a copy of the relevant trial transcript and will file a Motion to Enforce the Confidential Settlement Agreement upon receipt of that trial transcript.

was able to obtain that transcript and submit it to the court, the court decided to reconsider its previous finding about the agreement because additional facts—in the form of the August 16 transcript—had now been revealed. Because the motion alleged a mistake of fact,[10] it was correctly treated as a Rule 60(b) motion.

It follows that the Rule 60(b) motion was timely filed. The trial court specifically accepted appellee's "proffer that the transcript was not earlier available" and thus that it was filed within a reasonable amount of time. In addition, the motion was filed within one year from the date of the order it was asking the court to reconsider. *See Moradi v. Protas, Kay, Spivok & Protas*, 494 A.2d 1329, 1332–1333 (D.C. 1985). Thus it was timely under any part of Rule 60(b).

### III

■■ A motion under Rule 60(b) for relief from a judgment or order "is en-

trusted to the trial court's discretion," and a ruling on such a motion will be overturned only if that discretion has been abused. *In re Tyree*, 493 A.2d 314, 317 (D.C.1985); *see Clay v. Deering*, 618 A.2d 92, 94 (D.C.1992); *Moradi*, 494 A.2d at 1332. It is well recognized, of course, that "[a trial] court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (citation omitted). That, in our view, is what happened here.

■ In ruling on the Rule 60(b) motion, the trial court concluded that "representations made in Court govern the high/low agreement ... even if the [original] agreement [*i.e.*, the stipulation filed with the court] is valid." Acknowledging that some sort of agreement was made,[11] the court determined that, whatever that agreement was, it "was later modified and the parties recognized that modification before the Court."[12] Relying on *Clark v. Clark*, 535

---

**10.** Though the same judge was presiding when counsel explained the terms of the agreement in open court, we cannot reasonably expect her to have remembered the minutiae of that explanation several weeks after trial, as appellants contend. Indeed, the judge's original ruling on the motion on costs shows (understandably) that she had no independent recollection of the discussion at the August 16 hearing.

**11.** The correspondence between the parties unmistakably shows that an oral agreement was confirmed by both counsel in letters dated March 18 and March 20, 2002. Specifically, on March 18 counsel for appellants stated the proposed terms of the agreement to counsel for appellee:

> Your client will be guaranteed a minimum amount of $20,000 if she prevails on liability. In return, your client will cap her damages at $300,000. As a result, if the jury enters a verdict of less than $20,000, your client will receive $20,000. If the jury enters a verdict in excess of $300,000, the judgment will be limited to $300,000.

Counsel for appellee accepted these terms when he wrote on March 20: "I agree to the high/low figure discussed in your letter ($300,000/$20,000)." At that point the contract was complete.

At no time, either then or later, did appellee express an objection to the terms of the agreement set forth in the March 18 and March 20 letters. Appellee now asserts in her brief that appellants' counsel "sought to modify the agreement by adding the condition of a finding of liability [in the stipulation filed with the court] shortly prior to trial by inserting it into his correspondence and his Stipulation [at the] last minute ...." This assertion is refuted by the March 18 letter, and in any event it is irrelevant. The substance of the agreement was clearly laid out in the exchange of letters in March 2002, five months prior to trial.

**12.** It is apparently undisputed (and appellants' brief so states, without contradiction) that appellants' counsel signed his own name to the stipulation "and that of [appellee's] counsel" before filing the stipulation with the court. For this reason the court decided that

A.2d 872 (D.C.1987), the court reasoned that a lack of consideration did not bar an alteration of the original agreement because appellants had conceded in open court that appellee would receive $20,000 at a minimum at the conclusion of the trial:

> When defense counsel stated, "Yeah, it's still a gap, so if you were looking at settlement, it's still a large gap there," he illuminated for the court that the purpose of the jury trial was to reach the settlement amount that the parties could not reach otherwise. This statement concedes defense counsel's understanding that even if the jury returned a verdict in favor of defendant, plaintiff was still entitled to at least $20,000.

But *Clark* does not support the trial court's analysis. In *Clark* a dispute arose concerning an alimony agreement which the parties had orally revised. Though adequate consideration existed for the modifications to the contract in *Clark*, this court observed that oral alterations to a contract are valid, even if they are not supported by consideration, when those new provisions are "fully executed." That is, "Mr. Clark paid and Mrs. Clark received alimony payments at the modified levels without protest, and hence the modifications would no longer fail for lack of consideration." *Clark*, 535 A.2d at 877 (citing *Sloan v. Sloan*, 66 A.2d 799, 801 (D.C.1949)). That did not happen here. Once the contract was formed between the parties in March, any change to its terms required consideration unless those changes, in the words of *Clark*, were "fully executed." *Clark*, 535 A.2d at 877; *see Hershon v. Hellman Co.*, 565 A.2d 282, 283–284 (D.C.1989) (holding that the parties to a contract are free to modify the contract by mutual consent, but for any changes to be valid, there must be consideration). Here the agreement had not

been executed (it could not be until the trial had ended), and there was no consideration for the oral modifications. Thus the trial court's determination that the parties had modified the agreement at the August 16 hearing was erroneous, and *Clark* is inapposite.

Appellee contends nevertheless that when an agreement is placed on the record with both parties actively participating in the recital of its terms, and the agreement thus described is approved by the court, the court should rely on that recital, rather than on prior correspondence and any written stipulations that may have been filed earlier with the court, to determine the substance of the agreement. Appellee bases this theory on *Poire v. Kaplan*, 491 A.2d 529 (D.C.1985), in which we said, "Where parties in open court enter into an agreement to arbitrate and secure the court's approval of their agreement, such agreement becomes an order of the court which is binding on the parties." *Id.* at 533 (citation omitted).

*Poire* does not apply to this case because in *Poire* there was no previous agreement between the parties to arbitrate before they agreed in open court to settle their dispute by arbitration. After that court proceeding, they executed a written agreement to submit their dispute to an arbitrator. Thus *Poire* did not present the issue we have here, namely, whether a pre-existing contract could be modified by the statements of counsel in open court which were inconsistent with the contract terms on which the parties had already reached a meeting of the minds. In contrast to *Poire*, the parties in the present case had already entered into an agreement five months before the pre-trial hearing. In reciting the terms of that agreement to the court, the parties simply failed

it could "view the agreement as not being    completely integrated."

to explain correctly the bargain that they had already reached, which had been reduced to writing and filed with the court. Appellee is asking us, in effect, to hold that a previous contract whose provisions have already been presented to the court in writing can be altered simply because its terms are poorly explained by counsel in a courtroom proceeding. Such a result, we think, would be contrary to fundamental principles of contract law, including specifically—in this case—the basic requirement that a contract (and the alteration of a contract is itself a new contract) must be supported by consideration. We simply cannot accept such an argument.

## IV

The trial court's order granting appellee's Rule 60(b) motion is reversed. Oral alterations to a contract are permitted without consideration under the facts of *Clark;* however, *Clark* does not apply to the facts of this case. Here a contract was made between the parties five months before the pre-trial hearing, and thus any alteration of that contract required consideration. Because no consideration was ever given or received for the alteration supposedly made at the August 16 hearing, the original agreement cannot be deemed to have been modified. Therefore, the trial court's order granting the Rule 60(b) motion was legally erroneous and cannot stand.

The judgment is reversed, and the case is remanded for such further proceedings as may be appropriate.

*Reversed and remanded.*