**PFEISTER-BARTER, INC., Appellant,**

v.

**Edward P. LAOIS, Appellee.**

No. 85-75.

District of Columbia Court of Appeals.
Argued Sept. 23, 1985.
Decided Oct. 31, 1985.

Lisa R. Strax, New York City, for appellant.

Paul Reiber, for appellee.

Before PRYOR, Chief Judge, ROGERS, Associate Judge, and REILLY, Senior Judge.

7. *See Weyerhaeuser S.S. Co. v. United States,* 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963).

PER CURIAM.

This is an appeal from an order denying a motion to vacate a default judgment, and subsequent orders rejecting motions for reconsideration. An examination of the record shows that appellant, upon being notified of the entry of a default judgment, promptly filed a motion to set it aside, the motion being grounded upon an uncontroverted affidavit of lack of notice of the trial date. We reverse the orders.

According to a complaint filed in the Superior Court on January 28, 1983, by an individual engaged in the jewelry trade, he had delivered a quantity of costume jewelry in 1979 to an agent of appellant-defendant Pfeister-Barter, Inc., a New York firm, who was then in Washington and received a document crediting him with $2,400. Plaintiff alleged that in April of 1981, he had attempted to utilize this trade credit, but defendant had refused to honor it or to make a monetary payment in lieu thereof.

A few weeks later, appellant filed an answer and counterclaim denying the allegations and asserting that the jewelry was accepted for consignment only and was later returned to the appellee. The counterclaim asserted that the value of the jewelry was overstated, and that plaintiff owed some $1,200 to appellant for brokerage services. The answer and counterclaim were signed by a member of this bar, Lisa R. Strax, who gave an office address in New York City. Throughout the litigation she has been the only defense counsel of record. Plaintiff responded by filing an answer to the counterclaim and also served interrogatories upon opposing counsel.[1]

While this discovery procedure was going on, plaintiff's counsel received a postcard from the assignment commissioner postmarked June 30, 1983, notifying him that the case was set for the non-jury calendar for April 12, 1984. On that date, appellant failed to appear. The court then entered a default judgment against appellant and signed an order awarding plaintiff $2,400, plus legal interest, attorney fees, and costs. Within 3 weeks of the judgment, appellant's counsel, who had received a copy of the order on April 21, 1984, filed a motion to set aside the default judgment. Her supporting affidavit averred that she had never received notice of any trial date from either counsel or the court. This sworn affidavit was uncontradicted, but defendant opposed the motion on the ground that because of the "presumption of regularity," it should be assumed that the Clerk's Office must have notified both parties of the trial date. Without explanation, the court denied the motion. Appellant filed a motion for reconsideration; it too was denied. Finally, appellant filed yet another motion to vacate the default judgment or in the alternative, to modify the judgment based on grounds previously invoked under Super.Ct.Civ.R. 60(b)(1) and (6), as well as on grounds of newly discovered evidence, under Rule 60(b)(2).[2]

Insofar as relevant, Rule 60(b)(1) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence,

1. The answers to these interrogatories do not appear in the record certified to this court on appeal, but apparently answers were transmitted to plaintiff's counsel. In his opposition to the first motion to vacate, he noted that such answers withdrew defendant's counterclaim. In oral argument before us, appellant's counsel conceded such counterclaim had been abandoned by her client.

2. The "newly discovered" evidence, attached to this motion, consisted of a box of costume jewelry (belatedly brought to light in a storage place on appellant's New York premises) assertedly appraised as being worth no more than $200. This exhibit was part of the record on appeal transmitted to this court by the Clerk of the Superior Court. Because of our disposition of this case on the ground that appellant's argument based on Rule 60(b)(1), *supra*, has merit, we do not address the issues raised by the motion predicated on Rule 60(b)(2) and the opposition thereto. Therefore, the challenged exhibit has been sealed by us without examination of the contents of the box.

surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

While the disposition of motions for relief filed under the foregoing rule rest in the sound discretion of the trial judge, in a recent case, *Dunn v. Profitt*, 408 A.2d 991, 993 (D.C.1979), we observed:

> Where a timely motion is made to vacate a default judgment, the policy of favoring trial on the merits will often justify reversal where even a slight abuse of discretion has occurred in refusing to set aside a judgment. Each case must be evaluated after considering the following factors: (1) was there actual notice of the proceeding? (2) did movant act in good faith? (3) was a prima facie adequate defense presented? and (4) did the movant act promptly? Against this, prejudice to the nonmoving party should be considered.[3]

Citations and footnote omitted.

These factors compel us to hold that if properly applied by the motions court, appellant was entitled to a ruling in its favor. The motion was based on lack of notice, supported by affidavit. It was opposed on the ground that such notice must be presumed to have been given the movant under our rationale in *Fireman's Insurance*

*Company v. Belts*, 455 A.2d 908, 909 (D.C. 1983). There we held that a default judgment should be permitted to stand, despite a claim of lack of service, stating that a presumption of truth supported a sworn return of service by the process server. But in this instant case there is no corresponding document in the record showing that the assignment commissioner's office sent any postcard notice of the trial date to counsel for appellant.

The truth of the matters alleged in the affidavit respecting lack of notice was sworn to by a member of the bar—an officer of this court. Hence, the denial of the motion to vacate implies that despite her allegations, counsel's affidavit was so lacking in credibility that the motions court could properly conclude that appellant did receive notice of the trial date. No hearing was held, however, to resolve such credibility issue. Hence, it was obviously impossible on this record for the court to have made any finding of fact on this point, nor did the court attempt to do so.

It is true, of course, that as a matter of routine, the staff of the court sends notices to all counsel simultaneously. But as there is always some possibility of a slip-up, either on the part of court personnel or the postal service, we cannot infer in the absence of testimony contradicting the movant's affidavit—that both parties here actually received notice of the trial date. The instant case is also distinguishable from cases like *Union Storage Co. v. Knight*, 400 A.2d 316 (D.C.1979), where a corporate defendant's failure to receive notice was due to its own violation of a statute requiring it to maintain information on its current address. No change of address occurred here.

As for the other factors—there is no indication that movant was not acting in good faith, for it had filed its answer within the time agreed upon by counsel and undertaken settlement negotiations. The answer itself set forth what must be

---

3. *Accord, Clark v. Moler*, 418 A.2d 1039 (D.C. 1980); *Jones v. Hunt*, 298 A.2d 220 (D.C.1972).

viewed prima facie as an adequate defense. As pointed out, upon learning of the default judgment, the movant expeditiously took the required procedural steps to have it set aside. Moreover, there is nothing in the record which suggests that the prevailing party below would have suffered prejudice had the case been allowed to go to trial.

Accordingly, the orders of the court denying the motions to vacate the default judgment are reversed and the case is remanded for further proceedings.

*Reversed and remanded.*