Stuart FITZGERALD, Appellant,

v.

HUNTER CONCESSIONS,
INC., et al., Appellees.

No. 97–CV–853.

District of Columbia Court of Appeals.

Argued April 7, 1998.
Decided April 30, 1998.

Raymond B. Benzinger, Arlington, VA, for appellant.

David W. O'Brien, Washington, DC, for appellees.

Before SCHWELB and FARRELL, Associate Judges, and KERN, Senior Judge.

SCHWELB, Associate Judge:

Stuart Fitzgerald appeals from an order of the trial court which dismissed his action for breach of contract on the ground that the complaint failed to state a claim upon which relief may be granted. The trial judge held that Fitzgerald's alleged oral agreement with Hunter Vending Company (HVC) and HVC's successor, Hunter Concessions, Inc. (HCI), was barred by the statute of frauds. The judge also held that, even if the statute of frauds did not apply, the complaint failed to allege facts giving rise to an actionable breach by either defendant. We reverse.

## I.

Fitzgerald alleged in his complaint that on May 5, 1988, he entered into an oral agreement with HVC under which Fitzgerald was to assist HVC in setting up a Carousel operation for the Smithsonian Institution and in "getting the Carousel operation up and running." In return, according to the complaint, HVC "agreed to pay to Plaintiff $2,500.00 per month for as long as the Carousel contract continued to be performed...." [1]

The complaint further alleged that "[a]fter the deal was closed, [HVC] transferred its interest in the Smithsonian deal to [HCI]." Fitzgerald asserted that he "fully performed his obligations under the parties' contract,"

including "assisting in setting up the operation to turn it over to the newly formed corporation [HCI]." Further, according to the complaint, HCI paid Fitzgerald $30,000 each year for the five fiscal years beginning on June 1, 1988 and ending on May 31, 1993.[2] Fitzgerald alleged, however, that after May 31, 1993, HCI "ceased honoring the parties' contract and refused to make any further payments to Plaintiff."

On or about May 1, 1996, Fitzgerald instituted this action against HVC, HCI, and two individual defendants who are no longer in the case. The defendants moved to dismiss the action and, on April 23, 1997, in a written order, the trial judge held that the complaint failed to state a claim upon which relief may be granted.[3] This appeal followed.

## II.

The District's statute of frauds provides in pertinent part that "[a]n action may not be brought ... upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing ... and signed by the party to be charged therewith or a person authorized by him." D.C.Code § 28–3502 (1996). Fitzgerald's attorney expressly conceded at oral argument that the alleged oral contract upon which Fitzgerald's suit is founded was "not to be performed within one year" as that phrase is used in the statute.[4]

---

1. The complaint also alleged that HVC's promise was "in exchange for Plaintiff's services in acquiring the contract and for Plaintiff's surrender of any interest he may have had in the Carousel deal."

2. $30,000 per year averages to $2,500 per month, but Fitzgerald did not receive $2,500 each individual month. Rather, according to Fitzgerald, the timing of the payments was related to the cash flow, and he generally received no payments in winter but larger payments during the summer months.

3. Initially, on December 16, 1996, the defendants' motion to dismiss was mistakenly granted as "unopposed." Fitzgerald immediately moved to alter and amend the judgment, pointing out that he had filed a timely opposition to the motion. On January 14, 1997, the trial judge denied Fitzgerald's motion to alter or amend the

judgment for technical deficiencies, "without prejudice to the filing of a new motion complying with the January 2, 1997 General Order." On January 17, 1997, Fitzgerald filed a revised and technically acceptable motion. The trial judge deemed Fitzgerald's submission as timely and addressed the case on the merits.

HVC and HCI now contend that the revised motion to alter or amend was untimely under Super. Ct. Civ. R. 59(e) because it was filed more than ten days after the December 16, 1996 order. The trial judge evidently treated Fitzgerald's revised motion as simply a technical correction of a timely initial motion. We discern no error in this regard.

4. We have no occasion to decide whether this concession was a provident one. *But see Launay v. Launay, Inc.,* 497 A.2d 443, 449 n. 4 (D.C. 1985); *Hodge v. Evans Fin. Corp.,* 262 U.S.App. D.C. 151, 153–54, 823 F.2d 559, 561–62 (1987).

■ Fitzgerald contends, however, that HCI's payments to him over a five-year period constituted partial performance of HCI's obligations under the agreement; that in reliance on HVC's promise and HCI's conduct, he (Fitzgerald) fully performed all of his own obligations; and that these circumstances render the complaint sufficient under an exception to the statute of frauds. We believe that, at least at the pleading stage of this case, Fitzgerald's point has merit. As we recently explained in *R & A, Inc. v. Kozy Korner, Inc.*, 672 A.2d 1062 (D.C.1996),

> the statute of frauds, D.C.Code § 28–3502 (1991 Repl.), bars the enforcement of an oral contract that cannot by its terms be performed within one year. Here, the terms of the agreement made orally between Gatzionis and Vassilas provided for monthly payments over five years. However, an exception to this statute is when partial performance has occurred. *See, e.g., Landow v. Georgetown–Inland West Corp.*, 454 A.2d 310, 313 n. 3 (D.C.1982) (partial or complete performance under oral contract may justify removing it from statute of frauds); *Amberger & Wohlfarth, Inc. v. District of Columbia*, 300 A.2d 460, 463 (D.C.1973) (same). Here, the payment by R & A of $120,000 (as of September 1992) would constitute substantial partial performance.

*Id.* at 1067 n. 8.[5]

■ Fitzgerald's complaint "should not be dismissed for failure to state a claim unless it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abdullah v. Roach*, 668 A.2d 801, 804 (D.C.1995) (citations omitted). Applying this standard to the case before us, we conclude that, at least at the pleading stage, dismissal of the action as barred by the statute of frauds was premature.[6]

### III.

HVC and HCI also contend, and the trial judge held, that independent of the statute of frauds, the complaint does not allege facts which would render either of these defendants liable. HVC asserts that, under the terms of the oral agreement described in the complaint, HVC was obliged to make payments to Fitzgerald only so long as HVC was administering the Carousel contract with the Smithsonian. HCI claims that Fitzgerald has failed to allege in his complaint that HCI assumed HVC's obligations to Fitzgerald or entered into any independent contract with him, and that HCI therefore is not liable to Fitzgerald.

■ HVC's contention is unpersuasive. Fitzgerald has alleged in paragraph 8 of his complaint that HVC "agreed to pay to Plaintiff $2,500.00 per month *for as long as the Carousel contract continued to be performed* ...." (Emphasis added.) Construed in the light most favorable to the plaintiff, *see Abdullah, supra*, 668 A.2d at 804, this allegation means that HVC agreed to make the monthly payments to Fitzgerald for the duration of the Smithsonian contract, regardless of whether or not HVC transferred its interest to some other entity. Moreover, HVC's transfer of its interest to HCI would not normally relieve HVC of its contractual obligations to Fitzgerald in the absence of consent by Fitzgerald to a new arrangement under which further performance by HVC was excused. *See, e.g., Bashir v. Moayedi*, 627 A.2d 997, 999–1000 (D.C.1993).

---

5. Although the "partial performance" exception to the statute of frauds has been characterized as an "equitable" defense, *see Brewood v. Cook*, 92 U.S.App. D.C. 386, 389 n. 4, 207 F.2d 439, 442 n. 4 (1953), and although one court has suggested that such equitable exceptions may be asserted only where the plaintiff seeks equitable relief, *see Penick v. Frank E. Basil, Inc.*, 579 F.Supp. 160, 167 n. 3 (D.D.C.1984), we have applied this "partial performance" exception even where, as here, the plaintiff has sought legal relief in the form of money damages. *See, e.g., District of Columbia Hous. Fin. Agency v. Harper*, 707 A.2d 53, 54–57 (D.C. 1998); *Kozy Korner, Inc., supra*, 672 at 1065, 1067 n. 8.

6. Fitzgerald also claims that one or more of the checks which he received from HCI from 1988 to 1993 may contain a sufficient memorandum of the oral agreement with HVC to satisfy the statute of frauds. *See Penick v. Frank E. Basil, Inc.*, 579 F.Supp. 160, 167 (D.D.C.), *aff'd mem.*, 240 U.S.App. D.C. 254, 744 F.2d 878 (1984). The cancelled checks are now alleged to be in HCI's possession and are not in the record. We therefore express no opinion as to their sufficiency.

The issue as to HCI's liability is more difficult. The complaint does not squarely allege that HCI agreed to assume HVC's obligations, or that HCI promised independently to make payments to Fitzgerald. Nevertheless, Fitzgerald has alleged that HCI has paid him $150,000 over a five-year period pursuant to his agreement with HVC. He has implied, albeit somewhat obliquely, that HCI provided him with substantial sums of money, not because HCI was a good Samaritan, but because HCI had assumed HVC's obligations under the oral agreement.[7] Although Fitzgerald's claim against HCI is concededly somewhat shaky, we conclude that it is sufficient to survive a motion to dismiss.[8] Further proceedings are necessary before it can be determined whether there are genuine issues for trial.

### IV.

For the foregoing reasons, the judgment of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

7. Apparently anticipating appellees' defense, Fitzgerald specifically alleged in his complaint that "[t]he oral contract of the parties was not an employment contract and the money paid to Plaintiff was not a salary."

8. If the court were to adopt both HVC's theory that HVC is liable to Fitzgerald only so long as it administers the Smithsonian contract and HCI's theory that, on the facts alleged, HCI is not liable to Fitzgerald at all, then absurd consequences would follow. This is so because, with these two theories simultaneously in operation, HVC would be obligated to pay Fitzgerald a total of $300,000 if HVC administered the contract for ten years. If, however, HVC transferred its interest to HCI during the first month of the contract, then Fitzgerald would be entitled to receive nothing at all from either defendant.