David NUYEN, Appellant,

v.

Raysa LUNA, Appellee.

No. 03–CV–1373.

District of Columbia Court of Appeals.

Argued June 9, 2005.

Decided Oct. 13, 2005.

Daniel Wemhoff, for appellant.

Barbara McDowell, with whom Jennifer L. Berger, was on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and BURGESS, Associate Judge, Superior Court of the District of Columbia.*

BURGESS, Associate Judge:

David Nuyen ("Nuyen") appeals from an order denying his motion to vacate a default judgment. He also contends that the trial court erred in entering the judgment itself. We reject his attack on the judgment, but find merit in his contention that the trial court abused its discretion in denying the motion to vacate without stating its reasons. Accordingly, we reverse and remand.

### I. Procedural History

Proceeding *pro se*, Nuyen filed a complaint in the Landlord–Tenant Branch of the Civil Division alleging that his tenant, Raysa Luna ("Luna"), had failed to pay rent for three months. He sought possession and a money judgment for the unpaid rent. Luna filed a verified answer, counterclaim, and jury demand, alleging that Nuyen had breached the implied warranty of habitability by failing to correct housing code violations. She sought an abatement

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

of rent, a set-off or reimbursement for repairs, an injunction requiring Nuyen to repair the alleged violations, and such "further relief as the court deems just and proper." The landlord-tenant action was thereafter certified to the Civil Actions Branch pursuant to Super. Ct. Landlord and Tenant Rule 6.

Luna also commenced a separate civil action in the Civil Actions Branch seeking recovery for personal injuries that she and her daughters allegedly had suffered due to a collapsed ceiling and other conditions in the apartment. She sought compensatory and punitive damages, and an injunction requiring Nuyen to repair the allegedly unsafe conditions. Nuyen filed an answer denying the allegations in the complaint.

The judge presiding over the civil action consolidated it with the landlord-tenant action. Attorneys entered their appearance for Nuyen in the civil action. The court entered a scheduling order on February 22, 2003, which set deadlines for discovery, informed the parties that alternative dispute resolution would occur between August 22, 2002 and September 22, 2002, and stated that a pretrial conference would occur approximately sixty days thereafter.

Some three weeks after entry of the scheduling order, Nuyen was sentenced to two years imprisonment upon his plea of guilty to federal charges relating to the Department of Housing and Urban Development's investigation into Nuyen's compliance with the Residential Lead–Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d (2005).

When Nuyen failed to respond to Luna's interrogatories and requests for production, Luna filed a motion to compel. Nuyen's counsel responded in part that he had been unable to locate Nuyen's prison address in order to forward to him the discovery requests. The court granted the motion to compel and awarded attorney fees. Nuyen failed to provide discovery by the deadline set in the court's order, whereupon the court issued a second order on September 23, 2002, and warned Nuyen that it would impose sanctions if he did not respond.

Meanwhile, on September 12, 2002, the court issued notices scheduling the pretrial conference for November 13, 2002. It mailed the notices to Luna's lawyer, to Nuyen's lawyers in the civil action, and to Nuyen at his home address. It did not mail notice to Nuyen's prison address, as he had not notified the court of that address.

On November 10, 2002, Nuyen executed a settlement agreement, which was later signed by his counsel. Luna and her counsel executed the agreement on November 14. The terms of the agreement required Nuyen to pay Luna $16,000 in return for her releasing Nuyen from

> all claims, demands, action or damages which arise out of, or in any way relate solely to, the alleged personal injury claims of [Luna] and/or her minor children, which resulted in the filing of a lawsuit by [Luna] identified as Luna v. Nuyen Civil Action No. 01CA008500.

The agreement expressly exempted from its scope the claims and defenses in the landlord-tenant action, and stated that that action would "continue unhindered, unimpeded, and without any limitation to the causes or defenses asserted therein, notwithstanding the execution of this agreement."

On November 13, three days after Nuyen executed the settlement agreement, Luna and her attorney appeared for the scheduled pretrial conference in the landlord-tenant case. Nuyen did not appear, and neither did his lawyers in the civil action. The court took no action at the

pretrial conference but granted Luna leave to file a motion for default judgment.

On December 24, 2002, Luna filed a motion for default judgment on her counterclaim, on the ground that Nuyen had failed to attend the pretrial conference. She asked for a rent abatement in the amount of $4,000, punitive damages in the amount of $50,000, release of all monies in the registry of the court, and injunctive relief.

Nuyen's counsel in this appeal filed a praecipe on February 26, 2003, in which he entered his appearance "in order to respond to defendant's motion for default judgment [in] this remaining case." No response, however, was filed. On June 24, 2003, the trial court granted as unopposed the motion for default judgment, granting all of the relief Luna requested.

Acting *pro se*, Nuyen filed a motion to vacate the default judgment on July 14, 2003. He represented that he had not received notice of the pretrial conference, had been in prison since April 22, 2002, and had not been represented by counsel since the settlement of the civil action. He asserted that Luna's counterclaim had no merit, and attached to the motion a paper entitled "Plaintiff's Response to Defendant's Motion for Default Judgment and Motion for Enlargement of Time." The attachment stated, among other things, that there were no housing code violations in Luna's apartment, and argued that Nuyen's criminal convictions in the cases relating to lead-paint violations were irrelevant to the claimed housing code violations. In his motion, Nuyen represented that he had mailed and served the attached response immediately after receiving the motion for default judgment on January 3, 2003. (Nuyen's certificate of service on the response, however, indicated service of the response on December 27,

2002.) Citing Super. Ct. Civ. R. 59, Nuyen asked the court to vacate the judgment.

On July 24, 2003, Luna filed an opposition to Nuyen's motion. The opposition noted counsel's praecipe stating an intent to file a response to the motion for default judgment, and pointed out that the promised response had never been filed. Luna's opposition argued that Nuyen provided no grounds for relief under Rule 59, or "any other civil rule." Luna argued that Nuyen had asserted no error of law, no intervening change in the law, no new, previously unavailable evidence, and no manifest injustice warranting relief.

The trial court granted Nuyen's counsel an extension of time to amend Nuyen's motion. On August 26, Nuyen's counsel filed a motion to vacate the default judgment. The motion represented that, in response to the motion for default judgment, Nuyen had filed an opposition claiming that he had received no notice of the pretrial conference. The motion then, somewhat confusingly, represented that Nuyen had had his counsel "deliver a copy of his Opposition to the court jacket and the present judge in this case." In addition to reiterating Nuyen's position that he had received no notice of the pretrial conference, Nuyen's counsel added a new argument. He contended that the doctrine of *res judicata* barred the default judgment because the settlement in the civil action had necessarily resolved Luna's counterclaims in the landlord-tenant action.

On October 29, 2003, the trial court denied Nuyen's motion to vacate the default judgment "for good cause shown," without further explanation. On the same date, the trial court, pursuant to the settlement, dismissed with prejudice Luna's claims in the civil action. This timely appeal followed.

## II. *Analysis*

### A. *Appeal from the Default Judgment*

Nuyen's notice of appeal states that Nuyen appeals from the order denying the motion to vacate default judgment. Nevertheless, Nuyen makes several arguments attacking the trial court's default judgment itself. He argues, among other things, that the trial court abused its discretion in granting a default judgment as a sanction, and that the amount of punitive damages is so disproportionate to the amount of rent abatement as to deny him due process of law. Luna contends that these arguments are not available to Nuyen because he did not file a notice of appeal from the default judgment, but noted an appeal only from the order denying Nuyen's motion to vacate. We conclude, for reasons somewhat different from those Luna offers, that Luna is correct.

■ Our analysis begins with the proposition that

the timely filing of a [Super. Ct. Civ.] Rule 59(e) motion ... tolls the time for filing a notice of appeal from the original judgment, so that the time for noting such an appeal begins to run again from the entry of the order disposing of the Rule 59(e) motion.

*White v. Sargent*, 875 A.2d 658, 662 (D.C. 2005). *See* D.C. Ct.App. R. 4(a)(iii).

In *White*, one of the appellants appealed from an order denying a motion to reconsider an order granting summary judgment. She did not, however, appeal the order granting summary judgment itself. The court nevertheless held that, since the motion to reconsider was a timely filed motion pursuant to Rule 59(e), the appeal "encompass[ed] not only the denial of the Rule 59(e) motion but the original judgment as well ...." *Id.* Likewise, Nuyen's appeal encompasses not only the order denying the motion to vacate default judgment but also the order granting the default judgment, so long as his motion was a Rule 59(e) motion and so long as it was timely filed. Luna concedes that the motion was timely filed within ten days of the entry of the default judgment, as required by Rule 59(e).[1] Accordingly, we turn to the question whether Nuyen's motion was a Rule 59(e) motion.

Nuyen explicitly premised his *pro se* motion on Rule 59.[2] Rule 59(e) provides that a motion "to alter or amend a judgment shall be filed no later than 10 days after entry of judgment." Super. Ct. Civ. R. 60(b), however, also would have been a basis for granting Nuyen the relief he sought. That rule allows a court, upon a motion timely filed, to "relieve a party ... from a final judgment, order, or proceeding," and, although a Rule 60(b) motion is not required to be filed within ten days, it may be. *See United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164–65 & n. 9 (1st Cir.2004) (construing motion filed within ten days of final judgment as Rule 60(b) motion). The nature of a motion does not turn on its caption or label, but rather its substance.[3] We have noted that because Rules 59(e) and 60(b) "overlap

---

1. The judgment was entered on June 24, and the motion was filed on July 14. Using the counting rules of Rule 6(a), as construed in *Faggins v. Fischer*, 853 A.2d 132 (D.C.2004), Nuyen's motion was filed within ten days of entry of judgment. Super. Ct. Civ. R. 6(a).

2. We note, parenthetically, that he would have been more precise if he had cited Rule 59(e).

3. We have said that the nature of a motion should be determined by the relief it seeks. *Wallace v. Warehouse Employees Union No. 730*, 482 A.2d 801, 804 (D.C.1984), citing several cases.

..., it is not always clear whether a particular motion constitutes a Rule 59(e) motion or a Rule 60(b) motion." *Id.* at 805. (Citation omitted.) A motion that is "proper under either rule" will ordinarily be treated as a Rule 59(e) motion, if timely filed. *Id.* We conclude in this case, however, that Nuyen's *pro se* motion, though timely filed, was not a proper Rule 59(e) motion.

This court addressed the difference between a Rule 59(e) motion and a Rule 60(b) motion in *Wallace, supra* note 3. We stated that our cases

> described the difference between Rule 59(e) and Rule 60(b) motions in terms of whether, for the first time, the movant is requesting consideration of additional circumstances; if so, the motion is properly considered under Rule 60(b), but if the movant is seeking relief from the adverse consequences of the original order on the basis of error of law, the motion is properly considered under Rule 59(e).

*Id.* at 804 (citing *Coleman v. Lee Washington Hauling Co.,* 388 A.2d 44, 46 & n. 5 (D.C.1978) (citing 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 204.12[1] at 953); *Cohen v. Holmes,* 106 A.2d 147, 148 (D.C.1954)). Nuyen's *pro se* motion did not base his claim for relief on an error of law; he alleged an additional circumstance not available to the trial court when it granted the default judgment. That circumstance was Nuyen's failure to receive notice of the pretrial conference. Nuyen thus claimed, in effect, "excusable

neglect" in failing to attend the conference. This is a ground for relief under Rule 60(b)(1), and his *pro se* motion properly should be treated as a motion under that rule. *See United States v. $23,000 in U.S. Currency, supra,* 356 F.3d at 164 & n. 9 ("Rule 59(e) 'does not provide a vehicle for a party to undo its own procedural failures ....'") (quoting *Aybar v. Crispin–Reyes,* 118 F.3d 10, 16 (1st Cir.1997)). *See also* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 60.03[4] at 60–25 (3d ed. 2005) ("... [E]ven if filed within the time limit for a motion under FED. R. CIV. P. 59(e), a motion seeking relief on grounds of excusable neglect will be treated as a Rule 60(b)(1) motion, since Rule 59(e) does not provide a vehicle for a party to undo its own procedural failures.").

The trial court extended the time for Nuyen to amend his motion, and his counsel subsequently filed a supplemental motion, adding as an additional ground for relief the argument that *res judicata* barred a judgment against Nuyen. In this argument, Nuyen's counsel did claim an error of law, an error cognizable under Rule 59(e). Had Nuyen's *pro se* motion been a Rule 59(e) motion, we would face the question of whether the amended motion, filed under an extension granted by the trial court, could be treated as part of a timely filed Rule 59(e) motion.[4] Since we hold that Nuyen's motion was not a Rule 59(e) motion, but rather a Rule 60(b)(1) motion, we need not address this

---

**4.** In *Fitzgerald v. Hunter Concessions, Inc.,* 710 A.2d 863 (D.C.1998), the trial court granted as unopposed a motion to dismiss. The losing party filed a timely motion under Rule 59(e) on the ground that he had filed a timely opposition. The trial judge denied the motion without prejudice for "technical deficiencies," noting the movant's failure to comply with its general order governing motions. The movant then filed an amended motion satisfying the technical requirements. We

held that, even though the second motion was filed outside the ten-day period prescribed by Rule 59(e), the trial court committed no error in treating the second motion as timely filed because the second motion was simply a "technical correction" of the first. *Id.* at 864 n. 3. We did not address the issue of whether a non-technical amendment of a timely filed Rule 59(e) motion would be timely if filed outside the ten-day limit under an extension granted by the trial court.

question. The supplemental motion filed by Nuyen's counsel was a supplement to a Rule 60(b)(1), not a Rule 59(e), motion.[5] Nuyen may therefore appeal only from the denial of his Rule 60(b)(1) motion; he may not challenge the default judgment itself.

## B. *Appeal from the Denial of the Motion to Vacate*

Nuyen argues that the trial court abused its discretion in denying his motion to vacate without stating its reasons. We agree.

Rule 60(b) states in relevant part:

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . .

In considering whether to set aside a default judgment pursuant to Rule 60(b), the trial court must consider

whether the movant (1) had actual notice of the proceedings; (2) acted in good faith; (3) took prompt action; and (4) presented an adequate defense. Prejudice to the non-moving party is also relevant.

*Starling v. Jephunneh Lawrence & Assocs.*, 495 A.2d 1157, 1159–60 (D.C.1985).

■ We review the trial court's denial of a motion to vacate default judgment for abuse of discretion. There exists a "strong judicial policy favoring adjudication on the merits of a case." *Walker v. Smith*, 499 A.2d 446, 448–49 (D.C.1985). (Citations omitted.) In exercising its discretion, the trial court must weigh that policy against "[the] strong policy favoring the finality of judgments . . . ." *Clay v. Deering*, 618 A.2d 92, 94 (D.C.1992). Be-

cause judicial policy favors decision on the merits, however, "even a slight abuse of discretion in refusing to set aside a judgment may justify reversal." *Starling, supra,* 495 A.2d at 1159.

In *Starling, supra,* 495 A.2d at 1162, we stated:

This court has long emphasized that the trial court has a responsibility to inquire where matters are raised which might entitle the movant to relief under Rule 60(b).

We reiterated this point in *Reid v. District of Columbia,* 634 A.2d 423, 425 (D.C.1993), where we reversed the denial of a motion to vacate a dismissal of a complaint. In that case, the trial court denied the motion " 'for the reasons stated in the defendant's opposition.' " *Id.* We concluded:

A review of the record indicates that in denying appellants' motion to reinstate the case, the trial court did not consider the factors enumerated in either Rule 60(b)(1) or in *Starling.* There was no inquiry by the trial court into whether appellants' counsel's actions constituted mistake, inadvertence, surprise or excusable neglect which would justify setting aside the order of dismissal. Moreover, there was no inquiry into whether appellants had actual notice of the proceedings, acted in good faith, and took prompt action; nor was there any inquiry as to possible prejudice to the non-moving party or a recognition by the trial court of "evidence in the record reflecting unjustified delays, or noncompliance with the court rules, attributable to the appellant . . . ."

*Id.* (citations omitted). *See also Johnson v. Lustine Realty Co.,* 640 A.2d 708, 709 (D.C.1994) (holding that the trial court

---

**5.** We point out, in addition, that since Nuyen's *pro se* motion was not a Rule 59(e) motion, to the extent that the trial judge intended to allow an extension of time to file a Rule

59(e) motion, she was without jurisdiction to grant it. *Frain v. District of Columbia,* 572 A.2d 447, 450 (D.C.1990).

abused its discretion by not making the necessary inquiry and in failing to address two factors that bore directly on the Rule 60(b) motion). The failure to inquire into the factors bearing on a motion to vacate "too heavily tip[s] the scales in favor of the need for finality in litigation." *Walker, supra,* 499 A.2d at 449.

In his motion, Nuyen asserted that he did not receive notice of the pretrial conference. He claimed that he had attempted to file an opposition to the motion for default judgment. His motion was filed on July 14, about three weeks from the date on which the judgment was entered. On this record the trial court might reasonably find that Nuyen failed to receive notice of the pretrial conference, took prompt action to remedy his failure to attend it, and acted in good faith. The trial court's order, however, provides no indication that it inquired into these factors, all of which bore on the exercise of its discretion.

Luna argues, among other things, that Nuyen himself was responsible for his failure to receive notice of the pretrial because he did not notify the court of his prison address, and argues that his imprisonment would have prevented his participation in the pretrial conference in any event. As evidence of bad faith, she points to Nuyen's failure to arrange for the prosecution of his case during his two-year imprisonment, his violation of discovery rules, and his failure to file an opposition to the motion for default judgment. She claims prejudice because Nuyen's conduct delayed her trial, thereby jeopardizing her ability to present evidence and delaying a judgment that would return to her sorely needed rental payments.

■ Because the trial court denied the motion to vacate without stating its reasons, we need not evaluate the strength of Nuyen's and Luna's arguments. The trial court has the responsibility, in the exercise of its discretion, to consider the facts in light of the factors pertinent to a motion to vacate a default judgment. "In exercising its discretion, the trial court must choose 'what is right and equitable under the circumstances and the law' and state the reasons which support its conclusion." *Firemen's Ins. Co. v. Belts,* 455 A.2d 908, 909 (D.C.1983) (quoting *Johnson v. United States,* 398 A.2d 354, 361 (D.C.1979)).

■ Luna makes one argument, however, that arguably warrants our sustaining the trial court's judgment without a remand. She argues that Nuyen did not present an adequate defense. A motion under Rule 60(b) must offer a "sufficient elaboration of the facts ... to permit the trial court to conclude whether the defense, if found to be true, is adequate." [6] *Tennille v. Tennille,* 791 A.2d 79, 83 (D.C. 2002). More than a "bald allegation" is required to adequately state a prima facie defense under Rule 60(b), *Clark v. Moler,* 418 A.2d 1039, 1043 (D.C.1980), and notice pleading principles are not applicable. *Brady v. Graham,* 611 A.2d 534, 536 (D.C. 1992). The movant need not, however, show a likelihood of success on the merits. *Clark, supra,* 418 A.2d at 1043. Rather, the movant needs to "provide the [trial] court with reason to believe that vacating the judgment will not be an empty exercise or a futile gesture." *Murray v. District of Columbia,* 311 U.S.App. D.C. 204, 206, 52 F.3d 353, 355 (1995).

If the trial court had been presented only with Nuyen's counsel's proffer of a meritorious defense, we would have no trouble sustaining the judgment. In his supplement to his client's motion to vacate,

---

**6.** A meritorious defense is not necessary where the movant proves a void judgment under Rule 60(b)(4). *Alexander v. Polinger Co.,* 496 A.2d 267, 269 (D.C.1985).

counsel argued that *res judicata* barred entry of the default judgment. Nuyen presses the same argument in this court. This argument could not have been sustained by the trial court.

Where there has been a final judgment on the merits of a claim, the doctrine of *res judicata* "precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first trial." *Faulkner v. Gov't Employees Ins. Co.*, 618 A.2d 181, 183 (D.C.1992). The doctrine applies only where the issues in the prior and subsequent action arise out of the same cause of action. *Id.* Nuyen, through counsel, argued below that Luna's counterclaim in the landlord-tenant action and her complaint in the civil action arose out of the same cause of action. Therefore, he argued, Luna's counterclaim in the landlord-tenant action was necessarily resolved by the settlement. Nuyen renews these arguments here.

We need not address the issue of whether Luna's counterclaim and her civil action complaint arose out of the same cause of action. Even if they did, the parties made clear in their settlement agreement that the agreement pertained only to the complaint for personal injuries and did

> not limit or otherwise alter or affect any rights, claims, causes or defenses of the parties in the Landlord Tenant action . . . . and that said L & T action shall continue unhindered, unimpeded, and without any limitation to the causes or defenses asserted therein, notwithstanding the execution of this agreement.

A plaintiff may maintain a claim based on the same cause of action if "the parties have agreed in terms or effect that the plaintiff may split [her] claim, or the defendant has acquiesced therein." RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a). By agreeing that Luna could pursue her landlord-tenant claim, Nuyen waived any *res judicata* defense. *Gilles v. Ware,* 615 A.2d 533, 535, 545, 549–50 (D.C.1992) (per curiam) (adopting RESTATEMENT (SECOND) JUDGMENTS § 26(1)(a)). *See also Ifill v. District of Columbia,* 665 A.2d 185, 193 (D.C.1995), *cert. denied,* 517 U.S. 1169, 116 S.Ct. 1570, 134 L.Ed. 669 (1996).

Although the trial court could not have found that Nuyen's supplemental motion, filed by his attorney, raised a meritorious defense, it could have determined that Nuyen's *pro se* motion did. To explain this conclusion, we briefly review the record before the trial court.

Luna's counterclaim alleged that she and her two children inhabited a one-bedroom condominium under a lease beginning October 2000. She alleged several violations of the District of Columbia Housing Code Regulations existing from the inception of her tenancy, including the absence of heat, problems with plumbing, broken windows, rodent infestation, and the absence of a fire alarm. One of the most serious of the alleged violations consisted of an allegation that a ceiling had fallen on one of her children. In the motion for default judgment she stated, in support of her position that the court should award punitive damages:

> [S]hortly after moving to the property, [Luna] began to notice that the ceiling was in a state of near collapse. When she notified [Nuyen] of the dangerous state of the ceiling, [Nuyen] refused to effect repairs to the premises, despite actual and constructive notice of the danger and threat the condition posed to the health, safety and welfare of the Defendant, her minor children, and her invitees. Ultimately, the ceiling col-

lapsed upon the Defendant's minor child causing her injuries.

Luna's motion for default judgment reiterated her prayer for compensatory monetary relief, requesting an abatement of rent from the inception of the tenancy, calculated at $4,000. Luna's request for punitive damages was based on the housing code violations as well as on an allegation that Nuyen was an "archetyp[al] ... 'slumlord.'" Her allegation was supported by newspaper articles and other documents, attached to the motion, reporting Nuyen's ownership of several apartments with low-income tenants, his citation for thousands of housing code violations, and his indictment in connection with the Justice Department's investigation into lead paint violations in several of his apartments.

The default judgment granted the rent abatement in the amount of $4,000 for the entire period of the tenancy, and punitive damages in the amount of $50,000. The court also granted the injunctive relief requested. The rent abatement, if entered after a trial, would necessarily be predicated on proof that there were housing code violations from the inception of the tenancy that rendered the apartment unsafe and unsanitary, about which Nuyen knew or should have known, or on proof that such violations arose after the tenancy began, were not caused by Luna's intentional acts or negligence, and were not corrected within a reasonable time. *See* 14 DCMR §§ 302.1 and 302.2 (2004). The punitive damages judgment, if entered after a trial, would necessarily have been grounded on a finding, by clear and convincing evidence, that Nuyen's conduct in permitting or not correcting the housing code viola-

tions was "malicious, wanton, reckless, or in willful disregard of [Luna's] rights." *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 938 (D.C.1995), *cert. denied,* 519 U.S. 1148, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997).

Nuyen's answer to Luna's complaint in the civil action,[7] in which she alleged personal injuries arising from the collapsed ceiling, asserted that he and his managers

> have never been informed of any problems of the ceiling. Plaintiff has been a tenant only recently and the unit was in good condition at the time the Plaintiff moved in. Any complaints about the condition of the unit have been fixed properly.

In his *pro se* motion to vacate, Nuyen asserted that "[t]here are no housing code violations in the defendant'[s] premises as claimed by defendant and as known to plaintiff." He stated that plaintiff moved with her children into an efficiency apartment, and was told that she could not live there with children. "Out of compassion," according to Nuyen, he allowed her to live there while she waited for a one-bedroom apartment. When that became available, she refused to move. "[T]o avoid headache," he "renovated her apartment to almost new."

In response to the allegations in support of the punitive damages award, Nuyen stated that the lead-paint criminal case "had nothing to do with housing code violations." He further stated:

> In the District of Columbia, especially for apartment buildings with low income tenants, it is a common practice that when tenants are behind in rents, they tend to make things up and call housing

---

7. Nuyen did not file an answer to the counterclaim in the landlord-tenant action; the Rules of the Landlord–Tenant court did not require him to do so. *See* Super. Ct. L & T R. 2

(omitting Super. Ct. Civ. R. 13, pertaining to counterclaims and cross-claims, from inclusion in the Landlord–Tenant rules.)

inspectors for housing code violations. Housing inspectors would come and write up the violations. Landlords then usually have thirty days to correct the violations. Once the violations are corrected, landlords have to call the inspectors to re-inspect the units and clear the violations. However, it is a common practice that the inspectors would not come back in response to landlords' requests. They would come back only if tenants call them again for still pending violations. The high profile case against the plaintiff has been the product of a campaign from the HUD to promote awareness in the real estate industry nationwide regarding the lead-based paint disclosure requirements. It had nothing to do with this case.

 Nuyen's answer to the complaint, together with his motion, provided the trial court with sufficient factual assertions to permit it to conclude that he presented an adequate defense to a claim of rent abatement for the entire period of the tenancy. Although Nuyen did not, in his response, address each alleged housing code viola-

tion, he asserted that there were no violations "as claimed by" Luna, and that he had renovated the apartment "to almost new." He further asserted that tenants generally "tend to make things up and call housing inspectors for housing code violations." A fair inference from this *pro se* response is that Nuyen took the position that each of Luna's claims was false. Nuyen's answer to Luna's complaint in the civil action asserted that Luna's unit was in good condition when she moved in, and Nuyen specifically denied being informed of any problems with the ceiling, thus denying a central predicate for the rent abatement and punitive damages.[8] Further, his allegations that he had acted out of compassion toward Luna, had fixed her apartment to "almost new," and had never been informed of the problem with the ceiling, together with his assertion that his conviction in connection with the lead paint investigation was irrelevant to the assessment of punitive damages, were sufficient to permit the trial court to conclude that Nuyen had a defense to the complaint for punitive damages.[9] Beyond this, of

8. In deciding whether to vacate a default judgment where an answer has been filed, a trial court may consider the answer in deciding whether an adequate defense has been presented. *See Pfeister–Barter, Inc. v. Laois*, 499 A.2d 915, 917–18 (D.C.1985); *Dunn v. Profitt*, 408 A.2d 991, 993 (D.C.1979).

9. On remand, the trial court should consider, with respect to the claim for punitive damages, a jurisdictional point that Nuyen has not raised. The landlord-tenant action was certified to the Civil Actions Branch pursuant to L & T Rule 6, which provides that upon a proper jury demand, the case must be certified to the Civil Division. L & T Rule 1 provides in relevant part that a case certified pursuant to Rule 6 "shall remain subject to these Landlord and Tenant rules, as provided for in SCR LT 13–I [allocating between the Civil and Landlord–Tenant Branches responsibility for deciding motions]." It also provides that a case certified pursuant to L & T Rule 5(c) (providing for a plea of title) shall

be governed by the Superior Court Rules of Civil Procedure. L & T Rule 5(b) states that a defendant, in response to a possessory action for nonpayment of rent, may assert "an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises." It further provides: "No other counterclaims, whether based on personal injury or otherwise, may be filed in this Branch."

In *Mathis v. Barrett*, 544 A.2d 287, 288–89 (D.C.1988), we held that Rule 5(b) did not permit a counterclaim for, among other things, punitive damages based on housing code violations. In *Barnes v. Scheve*, 633 A.2d 62, 66 (D.C.1993), we held that where a landlord-tenant action combining a plea of title and a jury demand was certified to the Civil Actions Branch, and the plea of title was subsequently withdrawn, the Civil Action Branch trial court's "authority ... was limit-

course, we do not express any opinion on the merits of Nuyen's proffered defenses.

## III. *Conclusion*

We cannot hold as a matter of law that Nuyen's motion failed to meet any of the requirements for vacating a default judgment. Since the trial court's denial of the motion to vacate did not indicate that it inquired into the reasons Nuyen advanced in support of his motion, we must reverse the judgment and remand for proceedings consistent with this opinion.

*So ordered.*

ed in scope to that of the Landlord–Tenant Branch ...." Given the foregoing rules and cases, the trial court, in exercising its discretion, should consider whether it had any authority to award punitive damages.

We observe further that, even if the trial court on remand determines that a default is proper, it should not award any rent abatement without affording Nuyen a hearing. *See Firestone v. Harris*, 414 A.2d 526, 528 (D.C. 1980) (entry of default does not admit the amount of damages; defaulting party has a right to present evidence in mitigation of damages and cross-examine witnesses).